Good morning, Your Honors. May it please the Court, Arwen Swink appearing on behalf of Petitioner Ms. Ticas Delgado. In affirming the Immigration Judge's decision denying Ms. Ticas Delgado's applications for relief from removal, the Board of Immigration Appeals committed two substantial errors of law. First, with regard to the issue of whether Ms. Ticas Delgado has a well-founded fear of future persecution, the Board stated that because Ms. Ticas Delgado and her father expressed fears of the former guerrilla forces, she quote, failed to demonstrate government involvement or acquiescence to warrant statutory relief or protection. Now in that statement, it's pretty clear that the Board is discussing Ms. Ticas Delgado's asylum claim. In that same paragraph, the Board explicitly cites 8 CFR 1208.13, which is the section on establishing asylum eligibility. The Board's language, however, is almost identical to that found in 8 CFR 1208.18, which governs applications for protection under the Convention Against Torture. Now, applications for Convention Against Torture protection are subject to a fundamentally different standard from that for asylum cases. Specifically, for harm to be considered torture, it must be inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. And that's directly quoted from the regulation itself. Counsel, let me just ask a question, if I may interrupt. On the CAT relief, aren't your standards and failed to address relief under CAT foreclosed because of the case of Matter of Burbono, which said the IJ used the correct standard and addressed relief under CAT, and this was adopted by the BIA? Yes, Your Honor. I believe that the Board adopted the IJ's CAT decision, and we had not appealed that decision to this Court. So that the CAT relief application is not before the Court right now. Our concern is that the Board applied the CAT standard to the application for asylum. Now, the threshold showing for CAT relief is much higher than that for asylum. Whereas CAT requires specific government involvement or acquiescence, asylum applications are based on feared harm by either a government actor or some individual or group that the government is unable or unwilling to control. And if I could invite the Court to review its decision at Corablina v. INS, there the Court set forth that discrimination, harassment, and violence by groups that the government is unable or unwilling to control can also constitute persecution. Could you point me to specific language in the BIA's decision that suggests that they applied the incorrect test or standard for asylum? Yes, Your Honor. At the record at page 3, the first paragraph says that the immigration judge also determined that because the respondent and her father expressed fears of the guerrilla forces, the respondent failed to demonstrate any government involvement or acquiescence to warrant statutory relief or protection. And then the Court cites several cases, all of which relate to applications for asylum, specifically Morales v. Gonzalez and Sangha v. INS. The Court goes on to state that most importantly, the immigration judge recognized the ceasefire and significant changes in Guatemala since the respondent left, C8CFR 1208.13B1iA. Now that is the regulation which governs applications for asylum. Isn't it fair to assume that they were applying the traditional asylum standards and tests for asylum? Actually, Your Honor, I think we are bound by what the Board has said, not what we hope it would have done. Let me read to you from the IJ's decision. I'm now on page 17 of the IJ's decision, which is AR70. At the end of the paragraph, just before the paragraph that begins in conclusion, the IJ says, she must establish that the government of Guatemala is unable or unwilling to protect her, and that she has not done that, not on this record. Now, is that the proper standard for asylum? That is the proper standard, Your Honor. So the IJ states the proper standard? Yes, Your Honor. And the BIA says, the immigration judge also determined because the respondent or father expressed fears of the guerrilla forces, the respondent failed to demonstrate any government involvement or acquiescence to warrant statutory relief or protection, citing these pages. As I read the IJ, the BIA, their word acquiescence is a non-technical term referring for some reason to the word acquiescence, which is precisely what the IJ just said. That is certainly one interpretation, Your Honor. I think, however, that the use of the word acquiescence, as it is practiced below, is specifically used only in relation. Speaking for myself only at this point, I have to say that it's uphill work to convince me that the BIA doesn't know the standard for asylum, and to convince me that the use of the word acquiescence in this context, when they are affirming specifically what the IJ did, whether the IJ cites the proper standard, I'm not convinced that the BIA misapplied or misunderstood or misapplied the standard. Okay. Why don't you do me a favor and put aside past persecution for a moment and talk about future persecution? Yes, Your Honor. I think, and yes. Without the presumption. Yes, Your Honor. I think if the Board had considered Ms. Ticas Delgado's application under the proper standard, it would have been compelled to conclude that she has demonstrated a well-founded fear. Notably, Ms. Ticas Delgado explained that she would be quickly identified as her father's daughter if she was forced to return to Guatemala because her last name is unique. Now, this is significant because her father's name was publicized by the guerrillas who posted a list, a public list, of people that they intended to kill. Further, as the Court has noted, specifically in Navas, I'm looking at right here, the persecution of family members is highly probative to the likelihood that Ms. Ticas Delgado would face future harm. Now, even after the peace accords were signed, members of Ms. Ticas Delgado's family, specifically similarly situated members of her family, have continued to face harm and have, in fact, been murdered. I would invite the Court to review page 167 of the record where Ms. Ticas Delgado explains that her cousin, Rene, was shot to death by guerrillas, at this point former guerrillas, who still continue to operate with impunity in Guatemala. Now, Rene himself was politically neutral, like Ms. Delgado, but his brother, a close relative, Rafael, had served in the civil patrol. Similarly, in 2003, Alberto Delgado, another cousin, who was also politically neutral but had a close family member in the Guatemalan military, was murdered by men believed to be guerrillas who surrounded his vehicle and opened fire. Now, these murders are particularly relevant here because they demonstrate what's happening to similarly situated individuals to Ms. Ticas Delgado. And based on that evidence, as well as the copious evidence of record showing that the government is unable and unwilling, or unwilling, to protect individuals like Ms. Ticas Delgado from the former guerrillas, that, I believe, establishes the reasonableness of her fear of return. If I can reserve the rest of my time. I do have a question here. You cite to Hernandez-Ortiz, and my question is, isn't that case really distinguishable here because most everything that occurred, the most violent guerrilla attacks, occurred when she was in the United States or in her teens. What is your response? Well, I think there are two different issues, one regarding the past persecution issue and one regarding the well-founded fear. I think the case is not distinguishable in that the fact that she was in the United States when those murders occurred is largely irrelevant to the question of what would happen to her if she went back. So those murders are particularly relevant to the well-founded fear, and they're a slightly different question when it comes to the past persecution. All right. Thank you. Thank you, Your Honor. Ms. Clark. Good morning, Your Honors, and may it please the Court. I'm Katherine Clark, appearing on behalf of the Attorney General. Over the course of four hearings before an immigration judge at which Petitioner was represented by counsel, she failed to present evidence that could compel the conclusion that she was eligible for relief and protection. The agency did deny asylum for three reasons. First, Petitioner failed to show past persecution, where she herself was never a victim of any attacks, and the harm to the individuals she knew in Guatemala was not closely tied to her. Second, she failed to show a sufficient future risk of persecution, because her family members who were similarly situated to her actually remained safe in her home village. The individuals who were harmed were people who were involved in the military themselves, her uncle, or people who knew, for instance, her cousin, who was killed actually on page 164 of the record. Petitioner herself hypothesizes that he was killed because he, not because he was a son of a military member, but because he knew who had killed his father, because he knew the specific individuals who had killed his father,  and that is not a protected ground. With regard to her cousin, Rene, on page 166 of the record, Petitioner actually said that she did not know who killed him. That establishes the third aspect of the agency's denial of asylum, which is that Petitioner failed to show that anyone would persecute her with a statutorily protected motive. Petitioner did not show, of course, also that her risk would be countrywide. The individuals who were similarly situated to Petitioner, her grandfather, her grandmother, remain, because they were not politically active, they were not former military themselves, nor were they people who knew who had killed members of the military, they remain safe in her home village of Nueva Concepcion. They can stay safe there, and therefore it is no, the evidence does not compel the conclusion that Petitioner could not remain safe there. Also, Petitioner failed to show that Manuel, her father's colleague and her neighbor, would act on account of a protected ground, because she characterized that relationship repeatedly, including in her brief before the court, as a personal grudger of vendetta. And finally, with regard to changed country conditions, the Civil War is over in Guatemala, and the State Department evidence does indicate that there has been substantial reintegration of the guerrilla forces. The family members of Petitioner who were harmed were not similarly situated to Petitioner. She was not part of an extremely prominent military family, and her father was able to return to Guatemala in 2004 in safety. If he was able to return, and Petitioner characterizes him as the primary target, she does not establish that the evidence compels the conclusion that she would be unable to return, when she has never established that any guerrilla in Guatemala knows her identity, or even knows of her existence, nor has she actually presented any objective evidence that her last name is entirely unique within the entire country of Guatemala. Conditions have changed in Guatemala. Petitioner has not established past persecution. This case is distinct from Hernandez-Ortiz in many respects. Petitioner did not witness harm to family members to nearly the degree of the individuals in Hernandez-Ortiz, to the extent that she heard about later harm to family members. She was much older, and those were more distant family members. I believe it was a father and a brother in Hernandez-Ortiz. These were uncles and cousins who lived at a distance from Petitioner, thus making them more like the individuals, the family members, who were harmed at Arriaga Barrientos and Molina Estrada. These courts 1991 and 2002 cases, respectively. What do we do with the episode in which the grandfather's house was attacked? The grandfather shows up at the door with a wound. She sees the hired hand with very severe machete wounds described in the record in sort of an odd way, chest-like open. She didn't even see the heart beating, which I think must be a metaphor rather than a literal when he survives. In any event, there was some direct contact with violent behavior when she was fairly young. What do we do with that? Two issues there, and that is primarily again under Hernandez-Ortiz. It is easy to see how that situation is distinct from Hernandez-Ortiz and Jorge Zoc, the Second Circuit case, which was cited in Hernandez-Ortiz. In this case, Petitioner was witnessing harm to a farmhand of her grandfather. That was the most severe harm. I believe her grandfather had the wound was on his hand, and he was able to walk to his family's house, which was down the street, to get them and talk with them. The severe harm that she witnessed was to someone who was not a family member, and Hernandez-Ortiz permits the consideration of harmed family members in evaluation of past persecution in a limited situation when the petitioner witnesses that harm when the petitioner is a child. Here, Petitioner witnessed the after-effects of harm. Unlike the individuals in Hernandez-Ortiz and Jorge Zoc, she did not witness the actual attack. But she did see those after-effects of harm, but it was not to a family member. And so the close tie is not there. That was the very basis of the Board's decision, and their citation to Arriaga-Variantos is extremely relevant there as well. If the Court has no further questions, I will sum up. Respondent respectfully asks the Court to deny the petition for review because the record evidence does not compel the conclusion that Petitioner is eligible for relief or protection. Thank you. Response? The Board's second legal error is precisely what this Court has just been discussing, the failure of the IJ or the Board to apply Hernandez-Ortiz to consideration of the harms that Ms. Ticas Delgado suffered when she was a young child. The incident that Your Honor raised with the attack on her grandfather occurred when she was just eight or nine years old. And the attack was particularly severe. Although the government tries to minimize what happened to her grandfather, she described him as having been severely beaten, cut, and he arrived at her door bleeding late at night. The family associate who was injured so grievously, consideration of the impact of witnessing that type of severe injury and trauma, I think is required under Hernandez-Ortiz, because there's nothing that limits that decision specifically to blood family members. There's nothing that limits that decision specifically to blood family members. There's nothing that limits that decision specifically to blood family members. The child's dependence on the family and community makes the attack that Ms. Ticas Delgado witnessed the aftermath of particularly significant. Now, I don't expect this Court to decide that in the first instance, whether that would rise to the level of past persecution, but I do think the case has to go back on remand for the Board to consider whether those harms would constitute past persecution to a child of eight or nine years old, which it simply didn't do. Thank you.
judges: Nelson D. W., Fletcher W. , Paez